IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MICHAEL A. FORSYTHE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:09-cv-04170-NKL |
| ) | |
| WILLIAM J. CHABINO, ) | |
| WILLIAM ABBOTT, ) | |
| MILLER COUNTY, MISSOURI, and ) | |
| JOHN DOES 1-10, ) | |
| ) | |
| Defendants. | |

**ORDER**

Before the Court is the Motion for Summary Judgment [Doc. # 61] filed on behalf of Defendants William J. Chabino, William Abbott, Miller County, Missouri, and John Does 1-10. For the following reasons, the Court grants the motion.

**I.   Background[1]**

On May 5, 2008, Plaintiff Michael A. Forsythe was arrested for domestic violence and taken into custody by Miller County deputies. Defendant Chabino placed Forsythe into a cage in the back of his police car. Forsythe's hands were cuffed behind his back, but Officer Chabino did not place a seat belt or other restraint on Forsythe. Chabino

---

[1]The Court has considered the parties' statements of undisputed fact which are supported by evidence. In considering each party's motion, the Court has drawn all inferences in favor of the non-movant.

testified that Forsythe was too big to fit in the passenger's seat and "had to straddle the hump in the center seat." [Doc. # 62, Ex. 4 at 10.]

While en route to the Miller County Jail, Officer Chabino was notified of a disturbance at the jail. Officer Chabino turned on his lights and siren, accelerated to about 70 miles per hour, and then a deer struck the cruiser's front left quarter panel. Officer Chabino then reduced his speed to about 35 miles per hour, called in a report that he had struck a deer, turned off his lights and sirens, and made the rest of the trip to the jail at about 55 miles per hour.

When Officer Chabino arrived at the jail with Plaintiff Forsythe, he exited the vehicle to address the disturbance in the parking lot while another person transported Forsythe to the jail area. Forsythe was booked into the Miller County Jail at about 11:25 p.m.

Plaintiff Forsythe provided the booking officer with his answers to a Medical Questionnaire at the time of his booking. Forsythe reported a history of allergies, high blood pressure, prescribed diet, and a heart condition. He reported that he had quit taking his blood pressure medication 3 months prior. He then read, signed, and dated the Medical Questionnaire to confirm its accuracy. The Medical Questionnaire which Forsythe read, signed, and dated said nothing about a head or neck injury or that Forsythe had been involved in a recent auto accident. [Doc. # 65, Ex. 7.]

Plaintiff Forsythe claims that he had a bump and a cut on his head. A color photograph of Forsythe taken at the time of the booking shows no evidence of a cut to his

head or any swelling, although Plaintiff's glasses do appear bent. Plaintiff says that at the time of booking he told a woman that he had been injured. Karen Nave, a nurse, saw Forsythe the following morning because his Medical Questionnaire indicated high blood pressure. Plaintiff says that he told nurse Nave that he had a head injury and required treatment. The nurse's report says nothing about any head or neck injury or that Forsythe reported any injury to her. The nurse's notes indicate that Forsythe had no subjective complaints. The nurse gave Forsythe a dose of Tylenol.

Miller County had a policy calling for inmates to be handcuffed and restrained in transport. Sheriff Abbott has testified that despite the absolute language in the written policies and procedures of the Miller County Sheriff's Department, larger individuals are sometimes not restrained with a seat belt in the back of patrol cars because "we have to make do with what we have." [Doc. # 65, Ex. 3 at 51.] Miller County also had an inmate healthcare policy calling for the screening of new inmates.

Plaintiff's Complaint asserts three counts. Count I is a state law negligence claim against Miller County and Officer Chabino for injuries Forsythe suffered in the deer collision. Count II is brought under 42 U.S.C. § 1983 against Sheriff Abbott, Officer Chabino, and ten John Does for failing to provide Forsythe with medical care. Count III is also brought under § 1983 against Sheriff Abbott and Miller County, alleging inadequate policies for transporting detainees and for providing medical care to them.

**II.    Discussion**

Defendants move for summary judgment with respect to all counts.

### A. Section 1983 Claims

#### 1. Count III against Miller County and Sheriff Abbott

Plaintiff's Count III alleges that Defendants Miller County and Sheriff Abbott had in effect "policies, practices, and customs which operated to deprive Forsythe of his constitutional rights." [Doc. # 1 at 10.] Count III relates both to the manner in which Forsyth was transported as well as the medical care he was provided.

Section 1983 provides: "Every person who, under color of [law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Interpreting the text of § 1983, the U.S. Supreme Court has held that local governments cannot be held liable under a theory of *respondeat superior* but can only be held liable when the constitutional deprivation arises from a governmental policy or custom. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Where a plaintiff asserts that the local government has not directly inflicted the injury but has caused an employee to do so, "rigorous standards of culpability and causation must be applied to ensure that the [local government] is not held liable solely for the actions of its employee." *Bd. of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 405 (1997). "In enacting § 1983, Congress did not intend to impose liability on a municipality unless *deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Id.* at 400 (quoting *Monell*, 436 U.S. at 694).

In conducting a *Monell* analysis, the Eighth Circuit does not use the terms "policy" and "custom" interchangeably. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). A "policy" is "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Id*. Meanwhile, to prove that a local government's "custom" violated § 1983 there are three requirements:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
> (3) That plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was the moving force behind the constitutional violation.

*Jane Doe A v. Special Sch. Dist.*, 901 F.2d 642, 646 (8th Cir. 1990).

### a. Failure to Provide Prompt Medical Attention to Inmates with Serious Medical Needs

Plaintiff first argues that "Miller County is liable under 42 U.S.C. § 1983 for refusing to provide access to medical care for a pretrial detainee." [Doc. # 67 at 12.] To prevail on this claim, Plaintiff suggests that he must only prove deliberate indifference. *Id.* at 13. However, the caselaw cited by Plaintiff to support that theory involves only the standard for determining whether individual defendants are entitled to qualified immunity. *Id.* (citing *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009)). When suing a local governmental body under § 1983, a plaintiff must also "prove that a policy or custom was the 'moving force [behind] the constitutional violation.'" *Mettler*, 165

F.3d at 1204 (quoting *Monell*, 436 U.S. at 694); *see also Bryan County*, 520 U.S. at 403 (applying *Monell* to a § 1983 suit against a county).

Plaintiff Forsythe has failed to allege a municipal policy or custom of failing to provide prompt medical attention to inmates with serious medical needs. There is no such written policy in Miller County, and Plaintiff has not shown a continuing, widespread, persistent pattern of Miller County employees failing to provide prompt medical attention to inmates with serious medical needs. On this basis alone, Plaintiff's theory of local government liability for the alleged failure to provide him with prompt medical attention must fail because it amounts to nothing more than a theory of *respondeat superior* under § 1983.

Plaintiff argues that "Sheriff Abbott's decisions also have the weight of official policy, and as such, bind Miller County." [Doc. # 67 at 16.] Plaintiff notes that the Supreme Court has held that "a single decision by municipal policymakers may create official liability under appropriate circumstances." *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). With respect to providing medical attention, however, Plaintiff alleges only that "Sheriff Abbott also appears to be wholly ignorant of the requirement that an injured person in custody be given a fitness for confinement examination before being committed to the Miller County jail." *Id.* at 17. This is insufficient to show a policy or custom of not providing medical care to inmates. Indeed, it is undisputed that Plaintiff was given medical evaluations twice during his short stay at the Miller County Jail. Summary judgment is granted on this claim.

### b. Failure to Restrain Plaintiff in the Patrol Car

Plaintiff also argues that Miller County and Sheriff Abbott violated § 1983 because Forsythe was not restrained in the patrol car while he was being transported. It is undisputed that Miller County maintained an official policy calling for inmates to be handcuffed and restrained in transport. However, Sheriff Abbott testified that despite the absolute language in the written policies of the Miller County Sheriff's Department, larger individuals are not restrained with a seat belt in the back of patrol cars because "we have to make do with what we have." [Doc. # 65, Ex. 3 at 51.] Thus is appears there is a policy or custom in Miller County to not provide seat belts for large persons. However, showing a policy or custom is not enough. There must also be proof that the policy violates the United States Constitution. As a matter of law, Plaintiff has failed to show this.

The Eighth Circuit has held that the mere failure to restrain a passenger in a police vehicle does not violate the Constitution. *Spencer v. Knapheide Truck Equipment Co.*, 183 F.3d 902 (8th Cir. 1999), *cert. denied*, 528 U.S. 1157 (2000). In *Spencer*, the plaintiff alleged that he was placed in a patrol wagon with "no seatbelts or other safety restraint devices installed in the compartment." *Id.* at 904. "At some point during the ride, Spencer claims he was thrown forward into the bulkhead of the compartment causing severe injuries and rendering him a quadriplegic." *Id.* On these facts, the district court found that "(1) Spencer failed to establish evidence of a pattern of constitutional violations and (2) even if he had, he failed to demonstrate that the Board [of Police

Commissioners] was deliberately indifferent to the safety of the individuals transported in the patrol wagons." *Id.* at 905. The Eighth Circuit affirmed saying:

> [D]eliberate indifference is a difficult standard to meet. Regardless of whether the term is framed as a subjective or objective test, the alleged deprivation must still be "sufficiently serious" and "pose a substantial risk of serious harm." Thus, even using an objective standard, we do not think that the Board's purchase of patrol wagons without safety restraints nor its manner of transporting individuals in these wagons were policies that obviously presented a "substantial risk of serious harm." This is particularly true in light of the fact that . . . the Kansas City, Missouri, Police Department had guidelines in place which instructed its officers to exercise caution when transporting individuals in the patrol wagon. Though these guidelines may not have been adequate to prevent injuries, their failures, if any, constitute negligence at most.

*Id.* (citations omitted). The Eighth Circuit went on to find that even though the Board of Police Commissioners had received complaints regarding injuries occurring in the police wagons, "the complaints refer to minor injuries" and "do not establish that the Board was deliberately indifferent to conditions that posed a substantial risk of serious harm." *Id.*

Thus, even where there were no safety restraints in the vehicle at all, complaints had put the police on notice of injuries, and the passenger suffered such severe injuries that he was rendered a quadriplegic, the Eighth Circuit declined to find deliberate indifference to the individual's constitutional rights. Here, in contrast, the Miller County Sheriff's Department fails to restrain passengers only where the passenger is too large to fit into a single seat, there is no evidence of other injuries that put the police on notice, and there is little evidence of serious injury to Forsythe, even if all of his testimony is assumed to be true. Under the same reasoning, Plaintiff has failed to provide evidence

sufficient to support his theory of a substantive due process violation. Summary judgment on this claim is granted to Miller County and Sheriff Abbott.

## 2. Count II against Officer Chabino, Sheriff Abbott, and John Does

Count II is brought under § 1983 against Sheriff Abbott, Officer Chabino, and ten John Does in their individual capacity for failing to provide Forsythe with medical care. To recover on this claim, Forsythe must show that the defendants were deliberately indifferent to a serious medical need that he had. *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th cir. 1995). As explained by the Eighth Circuit:

> Deliberate indifference has both an objective and subjective component. The objective component requires a plaintiff to demonstrate an objectively serious medical need. The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need. . . . Deliberate indifference entails a level of culpability equal to the criminal law definition of recklessness, that is, a[n] . . . official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*McRaven*, 577 F.3d at 980, 983 (internal quotations and citations omitted). A serious medical need is "one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Vaughn v. Greene County, Arkansas,* 438 F.3d 845, 851 (8th Cir.2006).

Here, there is insufficient evidence from which to conclude that any defendant actually knew of, but deliberately disregarded, any serious medical need. There is no

9

evidence in the record that Forsythe ever told the named Defendants that he had been injured. It is undisputed that Officer Chabino exited the police car upon arrival at the jail to address another disturbance, at which point someone else took Forsythe to be booked. Therefore, even if Officer Chabino knew that Forsythe had hit his head during the collision with the deer, there is no evidence that Officer Chabino saw Forsythe's condition after the collision and knew Forsythe had a serious medical condition that required attention. Most importantly, the color photograph of Forsythe taken at the time of booking depicted no evidence of a cut to his head or any swelling. Although his glasses were bent, Forsythe did not appear to be in any pain, much less have a serious medical need. [Doc. # 71, Ex. 1.] Furthermore, Forsythe admits that he "failed to correct an indication of 'no' on the [medical] form concerning injury or trauma." [Doc. # 67 at 3.] So even if Forsythe had a serious medical need, there is no evidence that any Defendant knew of it much less that they deliberately decided not to address it. Although Forsythe does claim to have informed Nurse Nave and the woman at the booking desk of his alleged injury, he has not named either of them as a defendant in this action. It appears that neither woman should be considered among John Does 1-10, since Plaintiff's brief makes no attempt to identify them as defendants, nor did he move to amend the complaint to name them after discovery was completed.

Because there is insufficient evidence that to find either subjective or objective deliberate indifference, the Court grants summary judgment on this claim as well.

    **B.**    **Count I State Law Negligence Claim**

Finally, Count I is a state law negligence claim against Officer Chabino and Miller County.

### 1. Official Immunity

The official immunity doctrine "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008) (en banc) (citation omitted). "A discretionary act requires the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued." *Id.* (citation omitted). In contrast, a ministerial function is "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Id.* (internal quotation and citation omitted).

Plaintiff argues that Officer Chabino is not entitled to official immunity because the decision whether to restrain Forsythe was a ministerial act, required by official policy. [Doc. # 67 at 12.] Defendants maintain that "Chabino utilized his reason in determining whether or not to restrain Forsythe in the back seat and exercised discretion in how to transport Forsythe to Miller County Jail." [Doc. # 71 at 10.]

Miller County had a policy calling for inmates to be handcuffed and restrained in transport. Such an official police policy does not amount to "legal authority" mandating a ministerial action and rendering the form of arrest "of a clerical nature." *Southers*, 263

S.W.3d at 610. In fact, Sheriff Abbott testified that despite the written policies and procedures of the Miller County Sheriff's Department, larger individuals are sometimes not restrained with a seat belt in the back of patrol cars because "we have to make do with what we have." [Doc. # 65, Ex. 3 at 51.] Thus, Officer Chabino was required to exercise "reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued." *Southers*, 263 S.W.3d at 610.

Additionally, "[w]hen an officer is responding to an emergency . . . the officer exercises judgment and discretion and is entitled to official immunity." *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760 (Mo. 2006) (en banc). Here, Officer Chabino's response to the emergency call of a disturbance at the Miller County Jail was also a discretionary act warranting the protection of official immunity.

For the reasons stated above, Officer Chabino is entitled to official immunity for his alleged negligence. Therefore, the Court grants summary judgment in favor of Officer Chabino with respect to Plaintiff's state law negligence claim.

### 2. Sovereign Immunity

Under § 537.600, "Missouri counties ordinarily enjoy sovereign immunity from claims for the negligent acts and omissions of their employees." *Greene County v. Pennel*, 992 S.W.2d. 258, 262 (Mo. Ct. App. 1999). However, sovereign immunity is waived by statute for "[i]njuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles . . . within the course of employment." Mo. Rev. Stat. § 537.600.1(1). Thus, the question here is whether

Plaintiff Forsythe has made out a prima facie case of negligence for injuries directly resulting from negligence arising out of Officer Chabino's operation of his police car.

The manner in which Plaintiff Forsythe was placed in the back of the vehicle does not constitute the operation of a motor vehicle. *See Gorman v. Bishop*, No. 95-0475-CV-W-3, 1996 WL 34400137, * 6 (W. D. Mo., March 29, 1996) (plaintiff's negligence claims did not fit within statutory waiver of sovereign immunity where officer used paraplegic's belt "to tie his upper body to the wire mesh wall behind the bench" in a police van, resulting in injuries) *aff'd in part, rev'd in part on other grounds sub nom. Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998).

Furthermore, there is insufficient evidence for a reasonable jury to conclude that Officer Chabino operated the vehicle – i.e., drove as opposed to transporting without a seat belt – in a negligent manner. It is undisputed that while en route to the Miller County Jail, Officer Chabino was notified of a disturbance at the jail. Officer Chabino turned on his lights and siren, accelerated to about 70 miles per hour, and then a deer struck the cruiser's front left quarter panel. Officer Chabino then reduced his speed to about 35 miles per hour, called in a report that a deer had struck his car, turned off his lights and sirens, and made the rest of the trip to the jail at about 55 miles per hour.

Thus, there is insufficient evidence of "[i]njuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles . . . ." Mo. Rev. Stat. § 537.600.1(1). Therefore, the Court also grants summary

judgment in favor of Miller County with respect to Plaintiff's state law negligence claim.

**II.     Conclusion**

Accordingly, it is hereby ORDERED that Defendants' Motion for Summary Judgment [Doc. # 61] is GRANTED.

s/ NANETTE K. LAUGHREY
NANETTE K. LAUGHREY
United States District Judge

Dated: January 13, 2011
Jefferson City, Missouri